## WHEELER & WILSON MANUF'G CO. v. LYON.

### (Circuit Court, D. Minnesota. December 21, 1895.)

**1. MUTUALITY IN CONTRACTS.**
Alleged want of mutuality in an agreement guarantying the performance of the contract of another is no defense, where the contract had become executed.

**2. CONSTRUCTION OF CONTRACT.**
Where the agent of a sewing-machine company contracted to purchase from the company "all parts and attachments," held, that by "parts" was meant portions or pieces of machinery such as may be used for repairs; and by "attachments," mechanisms belonging to the original machine.

**3. LIABILITY OF GUARANTOR—ALTERATION OF INSTRUMENT.**
Held that, under the evidence, the guarantor was not released from his liability.

This was an action by the Wheeler & Wilson Manufacturing Company against William H. Lyon upon a bond guarantying the performance of a contract.

Warren H. Mead and J. D. Flannery, for plaintiff.

Kitchel, Cohen & Shaw, for defendant.

NELSON, District Judge. This action is brought to enforce a bond executed by defendant, whereby he guaranties the faithful performance of a contract between one Frank McCloud and the plaintiff company, and the payment of all notes, indebtedness, or damages which might arise under said contract. By written stipulation a jury was waived, and the case tried by the court.

(1) I find that plaintiff is a corporation resident and a citizen of the state of Connecticut, and defendant is a resident and citizen of the state of Minnesota.

(2) I find that for some time previous to the 22d day of July, 1889, Frank McCloud had been employed in selling and leasing sewing machines upon salary and commission, as the agent of plaintiff, and that on July 22, 1889, a certain contract was entered into between him and this plaintiff, which is as follows:

Exhibit A.

Minneapolis, Minn., July 22nd, 1889.

Wheeler & Wilson Mfg. Co., Chicago, Ills.—Gentlemen: I will purchase your machines, to be sold or leased by me in Minneapolis and Anoka, and in such other territory as you may hereafter designate in writing, on the following terms, f. o. b. Bridgeport, Conn., or, if shipped from Chicago, I to pay you what you pay from Bridgeport, Conn., to Chicago, and I pay the freight from Chicago to this place, for the following prices:

| | |
|---|---|
| No. 2 bare | $13 00 |
| " " O. W. half | 20 00 |
| " 6 Cyl. bare | 24 00 |
| " " " table cabinet platform | 31 00 |
| No. 8 K. B. E. 4 drawer | 19 00 |
| " 9 B. B. E. 2 drawer oak | 19 00 |
| " 9 D. A. A. 4 drawer folding leaf oak or walnut | 21 00 |
| " " C. C. C. 4 drawer drop leaf oak or hazel | 20 00 |
| No. 9 drop cabinet | 40 00 |
| " 9 F and table for cloak work | 18 00 |
| " " hand with box | 17 00 |

No. 12 or D. 12 bare................................................. 18 50
" " or D. 12 bare & H. T.................................. 20 00
" " " " " F. table .......................................... 24 00
" " " " " G. table .......................................... 24 25
" " " " " G. A. K............................................ 27 50
" " " " " F. table and cover................................ 25 50
" " bare and trimmer.................................... 26 50
" " " " and H. T................................. 23 00
2 needle stayer H. T........................................... 50 00
2 stitch zigzag.................................................... 45 00
3 " " .................................................... 77 00
German Universal polytype..................................... 55 00
Buttonhole machine, bare and T................................ 95 00
" " D. table foot power...................... 90 00
2 needle vamping machine H. T................................. 55 00

11/21/89. Wax thread machine, 10% on amt. f. o. b. Chicago.

Said machines to be disposed of in Minneapolis and Anoka ——— for cash, notes, or leases (the latter to be sent to you, to be held as collateral security), at regular retail prices, as shown on your printed price list, with the following exceptions:

No. 12 or D. 12 bare at.................... $25 or $28 if with transmitter
Buttonhole machine complete..................................... $125 00
2 needle stayer & H. T........................................... 65 00
2 stitch zigzag.................................................... 55 00
3 stitch zigzag.................................................... 100 00
2 needle vamping & H. T.......................................... 75 00

—or family machines to dealers at same prices and terms as per your printed contract machines to manufacturers on 30 days for cash.

On Saturday of each week I will render to you at Chicago, Ills., a true account of all machines disposed of and collections made, with all notes or leases or other evidences of indebtedness inclosed, and remit therewith, by sight draft on Chicago or New York, at my expense, all the cash I have on hand after paying the legitimate expenses of the business, and $25 for my own personal expenses; hereby* guarantying to you the payment in cash for the full amount for each machine at the above-named prices (and for which you may hold collateral) within twelve months after date of shipment or invoice. As soon as you receive the full price above mentioned on a note or lease, you are to assign same to me, without recourse, unless I am otherwise indebted to you. Then said notes and leases may be held by you, and the proceeds collected on the same applied on my indebtedness. I to do the collecting and instructing, and pay all expenses, including all taxes, insurance, licenses, rent, &c., incurred in the prosecution of the business during the continuance of my handling your machines under this contract, and will transact all business hereunder in my own name and for my own account, you to give me free use of all office fixtures here during the continuance of this contract. I am to receive fifteen per cent. on cash collected by me on leases, notes, or book accounts dated prior to July 22nd, 1889, which shall also be pay for my services in instructing parties in the use of machines already sold or leased in the city, and repairing the same free of charge in all cases when promises have been made to buy you or your agents. I agree not to handle or sell any make of sewing machines or parts during the continuance of this contract, except I get them through you, except old machines I get in trade. I agree to purchase from you all par s and attachments at twenty per cent. discount from your wholesale prices, and will pay for same ninety days from date of shipment; I to have the privilege to return all new parts and merchandise at 20 per cent. discount from your wholesale price list. You are, at the termination of this contract, to have the privilege of buying of me any or all of the machines I may have on hand, at the prices as above, less cost of parts there may be short, or damage there may be to machines, stands, or woodwork. If, at any time hereafter, there may be any change in the style or prices to me of machines, you may insert such change of style or price in this contract. I distinctly

understand and agree that the performance of this arrangement depends upon the entire satisfaction with my business, and I hereby state there is no verbal or written agreement between us other than is contained herein. This agreement may be terminated by either party, by giving thirty days' written notice.

Yours, respectfully,    [Signed]  Frank McCloud.
Your contract or proposal as above is accepted.
Yours, respectfully,    Wheeler & Wilson Mfg. Co.,
    [Signed]  J. L. Flannery, Agt.

(3) I find that on the same day the following guaranty was duly executed and delivered by defendant, accepted by plaintiff, and appended to and made a part of said contract; also, that, at the time of the execution and delivery thereof, defendant had full knowledge of the contents of the contract itself, and signed the guaranty at the request of McCloud, and as a matter of friendship to him.

For value received, and in consideration of the within-described contract, we hereby guaranty to Wheeler & Wilson Mfg. Co. (a corporation duly incorporated by the state of Connecticut), its successors or assigns, the full and faithful performance of the terms of said contract by the said Frank McCloud, and the payment by the said Frank McCloud of all notes which may be given, or indebtedness or damage which may arise, to Wheeler & Wilson Mfg. Co., from the said Frank McCloud; hereby consenting to any changes in prices or styles of machines, extensions or renewals of notes or leases or accounts, without notice. Witness our hands and seals this twenty-second day of July, 1889.

Witness: J. L. Flannery.    Walter A. Smith.    [Seal.]
Witness: J. L. Flannery.    Wm. H. Lyon.    [Seal.]
Witness: J. L. Flannery.    Mrs. Jennie McCloud.    [Seal.]

(4) I find that immediately thereafter McCloud carried on and conducted the business of selling and leasing sewing machines, and of settling up the old business of the company in that vicinity, under said contract, until December 7, 1892, when the contract was terminated, and there was claimed to be due plaintiff thereunder the sum of $8,636.32 from said McCloud, no part of which has been paid. The termination of the contract on December 7, 1892, was made forthwith, at the request of McCloud, by an arrangement between him and plaintiff, but without any previous notice from one to the other, and without any notice to defendant.

(5) I find that on December 19, 1890, McCloud wrote a letter to plaintiff, at Chicago, in which he says:

"The 17th of January, my present contract closes. That gives you 30 days to put a man in my place. And on the 27th of December I shall discharge all my salaried help, excepting the office lady, unless I hear from the company, and they wish to retain them."

But no further action was taken with reference to the termination of the contract by either party, and McCloud continued his relations with plaintiff under the contract.

(6) I find that at certain times prior to March, 1891, and from that time until the termination of the contract, McCloud retained $30 instead of $25 per week; but this was done, not only without the consent, but under the objection of plaintiff, who frequently remonstrated in writing against such retention on the part of McCloud.

(7) I find that, after the execution of said contract and the instrument appended thereto, the following words were added, without

the knowledge of defendant, at the end of the list of machines contained in said contract: "11/21/89. Wax thread machines 10% on amt. f. o. b. Chicago,"—which means, November 21, 1889, wax thread machines, ten per cent. on amount, free on board, Chicago; but that said addition was made by the head bookkeeper of plaintiff as a memorandum for the guidance of the bookkeepers of plaintiff, in case any such machine were ordered by McCloud, and was not made for any other purpose whatsoever.

(8) I find that, after July 22, 1889, plaintiff had no written communication with defendant until December 7, 1892, at which time defendant was notified by plaintiff that McCloud was indebted to it in the sum above named, of $8,636.32, and that it would look to him for payment, and that no part thereof has been paid.

(9) I find that the amounts paid by McCloud to plaintiff after January 17, 1891, were more than sufficient to repay the plaintiff the sums due and owing it by McCloud on January 17, 1891.

(10) I find that, prior to December 7, 1892, no written notice was given to defendant that any goods, wares, or merchandise were furnished to said McCloud pursuant to the contract in suit.

Upon suit being brought, a bill of particulars was filed by plaintiff, which is a part of the record in this case.

As conclusions of law:

1. I find that the contract between the plaintiff and McCloud of July 22, 1889, was a valid and subsisting contract between the parties, according to the terms thereof.

2. I find that the instrument executed by defendant, appended to and of equal date with the contract last named, constituted a valid and subsisting agreement, whereby, for a valuable consideration, defendant undertook to and did guaranty the full and faithful performance of the contract executed by Frank McCloud.

3. I find that said instrument of guaranty is in full force and effect; that defendant is liable to plaintiff thereunder, and has not been in any way released from the obligation thereof by anything that has occurred since the execution and delivery of said contract of guaranty.

4. I find that defendant cannot be held liable or answerable to plaintiff, under the contract of guaranty, for the following items, to wit: $433.90 for horses, wagons, etc.; $164.03 for oil, tools, etc.; $512.47 for tabling and shafting; $684.80 for pulley, etc.; $111.68 for cotton thread, etc.,—items mentioned in Exhibit XXX of the record, amounting in all to the sum of $1,906.88; nor for the sum of $200.50, for machines furnished not of plaintiff's manufacture; nor for $38.28, abandoned on the trial.

5. I find that plaintiff is entitled to a judgment against defendant in the sum of $6,490.66, with interest thereon at the rate of 7 per cent. per annum from the 7th day of December, 1892, together with the costs and disbursements of this action. Let judgment be entered accordingly.

Mem. With regard to the point urged by defendant, that there is no mutuality in the contract, the authorities cited are not applicable,

because the contract had become executed, and was not executory. Logging Co. v. Robson, 16 C. C. A. 400, 69 Fed. 775.

Under the contract, McCloud agreed to purchase from plaintiff "all parts and attachments," and, in my opinion, none of the items disallowed come under that heading. By the word "parts" is meant portions or pieces of machines such as may be used for repairs; and by "attachments," mechanism belonging to the original machine. While it may be true that some of the items disallowed were turned over to McCloud, charged and afterwards credited to him at certain prices, the defendant cannot be held liable therefor.